IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 13-cv-00785-WJM-BNB

NORSTAR RESIDENTIAL, LLLP, a Colorado limited liability limited partnership,
NORSTAR, INC., a Colorado corporation,
KELLY BEGG, individually,
WILDHORSE RIDGE, LLLP, a Colorado limited liability limited partnership, and
CONCERT AMERICAN HOMES, INC., a Colorado corporation,

Plaintiffs,

v.

FIRST MERCURY INSURANCE COMPANY,

Defendant.
_____

**ORDER**
_____

Now before me are the following:

(1)  Defendant's **Motion for Order to Compel** [Doc. # 19, filed 8/23/2013] (the "Motion to Compel"); and

(2)  **Defendant's Motion to Compel Subpoenaed Documents** [Doc. # 28, filed 9/16/2013] (the "Motion to Compel: Subpoenas").

I held a hearing on the motions on October 21, 2013, and took them under advisement. Having considered the matters raised, I DENY the Motion to Compel [Doc. # 19] and GRANT IN PART and DENY IN PART the Motion to Compel: Subpoenas [Doc. # 28].

This is an insurance coverage case. Wildhorse Ridge Condominiums Homeowners Association, Inc. (the "Association"), was the plaintiff in the underlying action. The plaintiffs here (collectively "Norstar") were the defendants. Norstar confessed judgment in the underlying

case in the amount of $1.3 million.

The defendant here, First Mercury Insurance Company ("First Mercury"), issued a policy of commercial general liability insurance to the benefit of Norstar. First Mercury denied coverage under the policy, however, based on "the combined effect of exclusions j(5), j(6) and endorsement CL267 (11-85)." Scheduling Order [Doc. # 16] at p. 3. As a result, First Mercury did not participate either in the defense or indemnification of Norstar in connection with the Association's claims in the underlying action. Id. at p. 6. In this action, Norstar seeks a declaration on the issue of coverage and brings additional claims for breach of contract, insurance bad faith, and an entitlement to statutory damages under section 10-3-1116, C.R.S.

## I.  The Motion to Compel [Doc. # 19]

Many of the issues raised in the Motion to Compel have been resolved. Unresolved, however, is whether First Mercury may discover documents from Norstar containing its "communications with defense counsel in the Underlying Action, relating to evaluation of the Association's claims against the Plaintiffs in the Underlying Action," Response to First Mercury's Request for Production [Doc. # 19-3] (the "Response to PR") at ¶11, and "relating to damages and the evaluation of damages alleged in the Underlying Action." Id. at ¶12. Norstar has refused to produce the responsive documents on the grounds of attorney-client privilege and the work product immunity.

First Mercury argues that Norstar impliedly waived any privilege or immunity because:

> (1)    Assertion of the privilege is the result of some affirmative act, such as filing suit by the asserting party.
>
> (2)    Through the affirmative act, the asserting party has placed the protected information at issue by making it relevant to the case; and

>    (3)    Application of the privilege would deny the opposing party access to information vital to his defense.

Motion to Compel [Doc. # 19] at p. 4.

This action was removed here based on diversity jurisdiction. Notice of Removal [Doc. # 1] at ¶3. "[S]tate law supplies the rule of decision on privilege in diversity cases." Frontier Refining Inc. v. Gorman-Rupp Co., Inc., 136 F.3d 695, 699 (10th Cir. 1998). Consequently, Colorado law applies to the issue of the attorney-client privilege.

The attorney-client privilege in Colorado is codified at section 13-90-107(1)(b), C.R.S., as follows:

> An attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment; nor shall an attorney's secretary, paralegal, legal assistant, stenographer, or clerk be examined without the consent of his employer concerning any fact, the knowledge of which he has acquired in such capacity.

In general, the purpose of the attorney-client privilege is to encourage "full and frank communications between attorneys and their clients. . . ." People v. Swearingen, 649 P.2d 1102, 1104 (Colo. 1982). "The privilege extends to confidential communications by or to the client in the course of gaining counsel, advice, or directions with respect to the client's rights or obligations." Mountain States Telephone and Telegraph Co. v. DiFede, 780 P.2d 533, 541 (Colo. 1989)  In addition, however:

> [T]he attorney-client privilege is not an absolute privilege and may be waived by the client. Any waiver must be demonstrated by evidence that the client, by words or conduct, has expressly or impliedly forsaken his or her claim of confidentiality with respect to the information in question and, thus, has consented to its disclosure.

People v. Sickich, 935 P.2d 70, 73 (Colo. App. 1996).

In DiFede, the Colorado Supreme Court recognized the "in issue" exception to the attorney-client privilege:

> Although we have not directly addressed this issue before, it is clear from our review of cases from other states that by placing in issue a confidential communication going directly to the claim or defense, a party impliedly waives the attorney-client privilege with respect to that communication.

DiFede, 780 P.2d at 543.  Similarly, in People v. Madera, 112 P.3d 688, 691 (Colo. 2005), the Colorado Supreme Court further explained the "in issue" exception to the attorney-client privilege, stating:

> Courts have found implied waiver of the attorney-client privilege when a defendant places the allegedly privileged communication at issue in the litigation, because any other rule would enable the client to use as a sword the protection which is awarded him as a shield.

And in People v. Trujillo, 144 P.3d 539, 543 (Colo. 2006), the court said that an implied waiver may be found "if a client asserts a claim or defense that depends upon privileged information."

The Colorado Supreme Court has cautioned against the excessive application of the "in issue" exception to the attorney-client privilege, however.  Id. at 690-91 (noting that the "general policy against invading the privacy of an attorney's course of preparation" is "well recognized and . . . essential to an orderly working of our system of legal procedure," and cautioning that exceptions to attorney-client privilege "are simply exceptions" and that "the rule is that attorney-client communications are privileged and protected from discovery by opposing parties").  Consequently, the court adopted a three-prong test to determine whether there has been an implied waiver of the attorney-client privilege by putting a matter in issue:

> [I]mplied waiver of a privilege is appropriate where the following factors are present: (1) assertion of the privilege was a result of

4

> some affirmative act, such as filing suit, by the asserting party;
> (2) through this affirmative act, the asserting party put the
> protected information at issue by making it relevant to the case;
> and (3) application of the privilege would have denied the
> opposing party access to information vital to his defense.

DiFede, 780 P.2d at 543-44; accord Madera, 112 P.3d at 691-92.  Finally, in analyzing whether an implied waiver has occurred, a court must determine:

> (1) as precisely as possible, the information sought to be
> discovered, (2) whether the information is relevant to a matter at
> issue, (3) whether the information could be obtained by any other
> means, (4) whether the information is privileged, (5) if it is
> privileged, whether the privilege has been waived, (6) if it is
> privileged, but has been waived, either explicitly or impliedly, the
> scope of the waiver.

Madera, 112 P.3d at 691.

The burden of proving waiver of the attorney-client privilege is on the party seeking to overcome it, in this case First Mercury.  Madera, 112 P.3d at 690.  In an attempt to meet its burden of proving that Norstar has put in issue the confidential documents of its counsel, First Mercury points to a statement contained in the Scheduling Order that "Norstar carefully reviewed the evidence on liability and damages and acknowledge the amount was reasonable, especially in light of the fact that [the Association's] cost of repair exceeds $5 million and its cost of investigation exceeded $350,000."  Scheduling Order [Doc. # 16] at pp. 2-3.  First Mercury argues that this review had to be performed by Norstar's attorneys, and that the attorneys' evaluations of the underlying action "bear[] directly on the issue of whether the settlement/confession of judgment was reasonable."  Motion to Compel [Doc. # 19] at p. 5.

I do not agree that Norstar impliedly waived the attorney-client privilege by bringing this action against its insurer.

5

The information sought by First Mercury includes documents containing "communications with [Norstar's] counsel in the Underlying Action relating to [counsel's] evaluation of the Association's claims" as well as "documents, including communications with [Norstar's] counsel in the Underlying Action, relating to damages and the evaluation of damages in the Underlying Action." Response to PR [Doc. # 19-3] at ¶¶11-12. The documents sought are clearly subject to the attorney-client privilege, and First Mercury does not contend otherwise.

It is not clear to me that the requested documents are relevant to a matter at issue in this case. The elements which Norstar must prove on its claim for breach of contract are (1) the existence of a contract, (2) which the defendant failed to perform, (3) but which the plaintiff did perform, and (4) any resulting damages. CJI Civ. 4th (2013) 30:10 and 30:33. The elements of an insurance bad faith claim are (1) that the plaintiff suffered a loss, (2) the defendant unreasonably failed to defend or indemnify the plaintiff, (3) the defendant's unreasonable conduct was a cause of the plaintiff's injuries, and (4) any resulting damages. CJI Civ. 4th (2013) 25:1 and 25:9. Finally, Norstar is entitled to statutory damages under section 10-3-1116, C.R.S., on a showing that its claim for insurance benefits was "unreasonably delayed or denied. . . ." The belief of Norstar or its counsel in the reasonableness of Norstar's decision to confess judgment and the appropriate amount of such a judgment are not an element of any of the claims asserted. At most, Norstar's counsel's evaluation of the strengths of the Association's claims and the extent of its damages may be tangentially related to Norstar's recoverable damages, but Norstar eschews any intention to rely on its counsels' opinions in proving damages. Under these circumstances, I conclude that  documents concerning evaluation by  Norstar's counsel of the strengths of the Association's claims and the extent of its damages in the underlying action are

not relevant to any matter at issue in the case.

Information concerning Norstar's evaluation of the Association's case in the underlying action may be obtained from other, and better, sources including non-privileged documents such as the reports and deposition testimony or experts in the underlying action; non-privileged analyses and the testimony of Norstar's representatives, including responses to written discovery in the underlying action; and the documents of experts and other witnesses who may testify here about Norstar's damages.  In view of these alternative sources, it cannot reasonably be said that application of the attorney-client privilege will deny First Mercury of access to information vital to its defense of this action.

Norstar also relies on the work product immunity to resist production of its lawyers' documents.  The work product immunity derives from Rule 26(b)(3)(A), Fed. R. Civ. P., which provides in relevant part:

> Ordinarily, a party may not discover documents and tangible
> things that are prepared in anticipation of litigation or for trial by
> or for another party or its representative (including the other
> party's attorney, consultant, surety, indemnitor, insurer, or agent).
> But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (I) they are otherwise discoverable under Rule 26(b)(1); and
>
> (ii) the party shows that it has substantial need of the materials to
> prepare its case and cannot, without undue hardship, obtain their
> substantial equivalent by other means.

See American Banker's Ins. Co. of Florida v. Colorado Flying Academy, Inc., 97 F.R.D. 515, 516 n.1 (D. Colo. 1983)(noting that Rule 26(b)(3) codifies the work product doctrine recognized in Hickman v. Taylor, 329 U.S. 495 (1947)).

The work product immunity is governed "by a uniform federal standard embodied in Fed.

R. Civ. P. 26(b)(3)." Frontier Refining, 136 F.3d at 702 n.10 (internal quotation omitted). The following procedure applies in cases concerning the discovery of alleged work product:

> Rule 26(b)(3) of the Federal Rules of Civil Procedure contemplates a sequential step approach to resolving work product issues. First, the party seeking discovery must show that the subject documents or tangible things are relevant to the subject matter involved in the pending litigation and are not privileged. Once such a showing has been made, the burden shifts to the party seeking protection to show that the requested materials were prepared in anticipation of litigation or for trial by or for the party or the party's attorney, consultant, surety, indemnitor, insurer or agent. Such a showing may be made by affidavit, deposition testimony, answers to interrogatories, and the like. If the Court concludes that the items were prepared in anticipation of litigation, the burden shifts back to the requesting party to show: (a) a substantial need for the materials in the preparation of the party's case; and (b) the inability without undue hardship of obtaining the substantial equivalent of the materials by other means.

Martin v. Monfort, Inc., 150 F.R.D. 172, 172-73 (D. Colo. 1993)(internal citations omitted).

I have found that the documents requested are not relevant to the subject matter of this action. Even if that conclusion were wrong, it is not disputed that the documents were prepared in anticipation of litigation or for trial and, because there are alternative, non-work product sources for the information requested, First Mercury cannot show either a substantial need for the lawyer's documents or undue hardship in obtaining the substantial equivalent by other means.

## II. The Motion to Compel: Subpoenas

First Mercury also sought Norstar's lawyers' documents by subpoenas served directly on those lawyers. The subpoena served on Steven C. Choquette of Choquette and Hart, LLP, who was "private and personal coverage counsel," Joint Response [Doc. # 37] at p. 1, commanded the production of:

> 1. All documents containing communications with any insurance company relating to the Underlying Action.
> 2. All documents relating to evaluation of liability and damages in the Underlying Action, including correspondence relating to same.
> 3. All documents relating to negotiations in the Underlying Action.
> 4. All documents relating to settlement in the Underlying Action.
> 5. All documents relating to settlement or other resolution of third-party claims or cross-claims in the Underlying Action.
> 6. All documents relating to any insurance company's contribution toward settlement in the Underlying Action.

Subpoena [Doc. # 28-1] at p. 4. Similarly, the subpoena served on Glendon L. Laird of McElroy, Deutsch, Mulvaney & Carpenter, LLP, who was "defense counsel for Norstar Residential and Kelly Begg," Motion to Compel: Subpoenas [Doc. # 28] at p. 3, commanded the production of:

> 1. All documents containing communications with First Specialty Insurance Co., relating to the Underlying Action.
> 2. Bills and statements of McElroy, Deutsch, Mulvaney & Carpenter, LLP's in the Underlying Action.
> 3. All documents relating to evaluation of liability and damages in the Underlying Action, including correspondence relating to same.
> 4. All documents relating to negotiations in the Underlying Action.
> 5. All documents relating to settlement in the Underlying Action.
> 6. All documents maintained in your correspondence file in the Underlying Action.
> 5. All documents relating to settlement or other resolution between Norstar Residential , LLLP, and/or, Kelly Begg, and the Plaintiffs in the Underlying Action, with Wildhorse Ridge Condominium Association.
> 6. All documents relating to First Specialty Insurance Company's contribution toward settlement in the Underlying Action.

Subpoena [Doc. # 28-3] at p. 4.

Messrs. Choquette and Laird have produced many non-privileged documents required by the subpoenas. They have refused, however, to produce documents subject to the attorney-client

privilege or the work product immunity. The privileged and work product documents commanded under the subpoenas are immune from discovery from Messrs. Choquette and Laird for the same reasons they need not be produced by Norstar.

The subpoenas command another category of documents, however, that Messrs. Choquette and Laird have withheld, not on a claim of privilege but because they "include express confidentiality provisions." Joint Response [Doc. # 37] at p. 6. This category concerns settlement documents entered into in connection with the underlying action. According to Messrs. Choquette and Laird:

> [T]he requirement of confidentiality was a specifically negotiated term of the settlement documents at issue, and the Plaintiffs and other parties to those documents have a legitimate expectation that their terms will remain confidential.

Joint Response [Doc. # 37] at p. 8. First Mercury counters that the confidential settlement documents are relevant, arguing:

> Plaintiff was insured by two other insurers, First Specialty Insurance Corporation and Clarendon American Insurance Company. In the event that it is determined that First Mercury has an obligation to indemnify Norstar, some method of allocation of liability between Norstar, and these other insurers will be necessary. Communications with other insurers are germane as to the issue of whether they adequately contributed to settlement in this case, and thus the reasonableness of the total settlement which was effectuated, and the relative responsibility of First Mercury.

Motion to Compel: Subpoenas [Doc. # 28] at p. 6.

I agree that the confidential settlement documents may be relevant to the amount of First Mercury's liability, if any, or may lead to the discovery of admissible evidence on that issue.

Rule 26(c), Fed. R. Civ. P., provides that a court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or

expense, including . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way. . . . ." However, "there is no absolute privilege for trade secrets and similar confidential information." Centurion Industries, Inc. v. Warren Steurer and Asso., 665 F.2d 323, 325 (10th Cir. 1981). In this case, there is no assertion that the settlement agreements contain trade secrets or that their production would annoy, embarrass, oppress, or unduly burden. To the contrary, there simply is an agreement among the parties to the settlement agreements that they should be maintained as confidential. Under similar circumstances, a court ruled:

> Parties cannot create a privilege against civil discovery by mere written agreement. Moreover, the mere fact that the settling parties agree to maintain the confidentiality of their agreement cannot serve to shield it from discovery. Although a settlement agreement contains a confidentiality provision, litigants cannot shield otherwise discoverable information from disclosure to others by agreeing to maintain its confidentiality, and cannot modify the Federal Rules of Civil Procedure by agreement.

Sonnino v. Univ. of Kansas Hospital Auth., 2004 WL 769325 (D. Kan. April 8, 2004); accord DIRECTTV, Inc. v. Puccinelli, 224 F.R.D. 677, 684-85 (D. Kan. 2004) (same).

I agree with the decisions in Sonnino and DIRECTV. An agreement to maintain as confidential the settlement agreements and related documents, about which no claim of privilege is asserted, does not alter the obligation of Messrs. Choquette and Laird to comply with those portions of the subpoenas calling for non-privileged documents (a) relating to negotiations in the Underlying Action; (b) relating to settlement in the Underlying Action; (c) relating to settlement or other resolution of third-party claims or cross-claims in the Underlying Action; (d) relating to any insurance company's contribution toward settlement in the Underlying Action; (e) containing communications with First Specialty Insurance Co., relating to the Underlying

Action; and (f) relating to First Specialty Insurance Company's contribution toward settlement in the Underlying Action.

IT IS ORDERED:

(1)     The Motion to Compel [Doc. # 19] is DENIED.

(2)     The Motion to Compel: Subpoenas [Doc. # 28] is GRANTED IN PART and DENIED IN PART as follows:

• GRANTED to require Messrs. Choquette and Laird to comply with the subpoenas insofar as they call for the production of non-privileged documents (a) relating to negotiations in the Underlying Action; (b)  relating to settlement in the Underlying Action; (c) relating to settlement or other resolution of third-party claims or cross-claims in the Underlying Action; (d) relating to any insurance company's contribution toward settlement in the Underlying Action; and (e) containing communications with First Specialty Insurance Co., relating to the Underlying Action; and (f) relating to First Specialty Insurance Company's contribution toward settlement in the Underlying Action.  Messrs. Choquette and Laird shall comply with the subpoenas to that extent at a date, time, and place as the parties may agree but no later than October 31, 2013; and

• DENIED in all other respects.

Dated October 23, 2013.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge